Rasch vs. Noth.

RASCH, Respondent, vs. NOTH, Appellant.

*March 24 — April 12, 1898.*

*Ejectment: Projection of roof.*

Where R. and N., who were owners of adjoining lots, each occupied
up to the division line between them, and N. built a barn with a
foundation resting wholly upon his own land, but the eaves pro-
jected and overhung that line some ten or eleven inches and the
drip therefrom fell upon the roof of R.'s barn, built close to the
same line, and were carried thereby so as to fall on N.'s land, and
no complaint was made until suit brought, and no damage was
proved, *held* that, upon these facts, R. could not maintain eject-
ment for such projection of N.'s roof over his land.

APPEAL from a judgment of the circuit court for Calumet
·county: GEO. W. BURNELL, Circuit Judge.   *Reversed.*

The facts in the case are stated in the opinion.

For the appellant the cause was submitted on the brief of
*James Kirwan*, attorney, and *L. J. Nash*, of counsel.

For the respondent there was a brief by *J. E. McMullen*,
·attorney, and *C. E. McMullen*, of counsel, and oral argument
by *C. E. McMullen*.   To the point that ejectment would lie
for the projection of one person's eaves over another's land,
they cited *Gilliam v. Bird*, 8 Ired. Law, 280; *Huggins v.
Ketchum*, 4 Dev. & B. Law, 415; *Childs v. Nelson*, 69 Wis.
125; *Stedman v. Smith*, 92 Eng. C. L. 1, and other cases noted
by the court.

CASSODAY, C. J.    This is an action of ejectment.    The defendant answered by way of a general denial and adverse possession.    A trial by jury being waived, the cause was tried by the court, and the findings of the court are to the effect that block 4 of the village, now city, of Chilton, was platted in 1852, and consisted of lots 1, 2, and 3 lying in the extreme northern portion of the block, which was of irregular shape, and another large and irregular lot, called the "Mill Lot," adjoining them upon the south; that the plaintiff owns the west one-half of the mill lot, which is immediately south of lot 3, and the defendant owns lots 1, 2, and 3; that both parties claim through and under a common grantor as far back as 1865; that at that time stakes designating the corners of the lots and the division line between lot 3 and the mill lot were still standing, and were pointed out to the purchaser; that in 1869 the original plat stakes were still standing and visible; that the then proprietors of lot 3 and the mill lot, respectively, participated in the location of the line between the two lots, and built a line fence thereon; that the same was then treated by the respective proprietors as the division fence located upon the true line between lot 3 and the mill lot until 1883, when the then proprietors conveyed lots 1, 2, and 3 to the defendant, who has since occupied up to such line fence as the true line; that in 1875 the respective proprietors dug a well on the line of said fence, each paying one half of the expense of its construction; that in 1891 the west one-half of the mill lot was conveyed to the plaintiff; that since that time the plaintiff and defendant have used the well in common; that the premises in dispute are northerly from such division fence, and are a part of lot 3, and not a part of the mill lot; that since 1869 the defendant and his grantors have held and occupied adversely all of the land lying northerly from the division fence; that the defendant has built upon lot 3 a barn, which stands and rests wholly upon his own soil, northerly from

the division fence; that the eaves of such barn did project and overhang the line to the extent of ten or eleven inches, but that the drip from the eaves fell upon the plaintiff's barn, which was also built so close to the line that its eaves, being lower down than the eaves of the defendant's barn, received and receive upon the northerly slant of its roof the water dripping from the eaves of the defendant's barn, and cast the same, together with all that falls' upon its northerly slope, back northward on the defendant's land; that no complaint by the plaintiff or his predecessors or grantors was ever made to the defendant on account of the projection and overhanging of the eaves of the defendant's barn, and no evidence was given as to damage, if any, occasioned by such projection.

As conclusions of law the court found, in effect, that such projection of the eaves of the defendant's barn constituted an invasion of the plaintiff's rights which was redressible in an action of ejectment; that the plaintiff was entitled to judgment accordingly, and for costs, and ordered the same to be entered. From the judgment so entered the defendant brings this appeal.

We are clearly of the opinion that this action of ejectment cannot be maintained upon the facts found by the trial court. Certainly, the cases in this court do not authorize a recovery in such a case. *McCourt v. Eckstein*, 22 Wis. 153; *Zander v. Valentine Blatz Brewing Co.* 89 Wis. 164; *S. C.* 95 Wis. 162. This last case, in line with the first, held, in effect, that "an intrusion by one lot owner of his foundation wall upon the land of the adjoining owner, without permission, is a trespass, and may be treated as a disseisin; but, if the owner of the land so intruded upon extends his own building to his line, and rests it upon such wall, and occupies the same continuously, he thereby elects to treat the intrusion as a mere trespass, and cannot maintain ejectment therefor." While it is found in the case at bar that the eaves of the defend-

Rasch vs. Noth.

ant's barn projected ten or eleven inches over the line, yet it was also found that the eaves of the plaintiff's barn projected under the eaves of the defendant's barn sufficiently to carry the water from both roofs northward onto the defendant's land. There is no dispute but that each party owns and occupies to the line mentioned. The only dispute is as to whether the plaintiff can maintain ejectment for such projection of the eaves of the defendant's barn, upon the facts found; in other words, whether the plaintiff can thus occupy his premises clear to his line, and at the same time maintain ejectment for such mere intrusion. And we must hold that he cannot. There are cases holding that one is liable in ejectment for the projection of his roof over another's land. *Murphy v. Bolger Bros.* 60 Vt. 723; *Sherry v. Frecking,* 4 Duer, 452. In others it is held that such action cannot be maintained. *Aiken v. Benedict,* 39 Barb. 400; *Vrooman v. Jackson,* 6 Hun, 326. See, also, *Leprell v. Kleinschmidt,* 112 N. Y. 364, where the question was left undetermined; *Harrington v. Port Huron,* 86 Mich. 46; *S. C.* 13 L. R. A. 664. It is unnecessary to determine the question in the case at bar.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the complaint.

On the question what disseisin will support ejectment, including cases of projection of eaves, see note to *Harrington v. Port Huron* (86 Mich. 46), in 13 L. R. A. 664.— REP.